**FILED**

**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

2008 Sep 12 PM 04:49

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 08-32507 |
| | ) | |
| Vera A. Davis, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's motion to dismiss for abuse brought under 11 U.S.C. § 707(b)(2) and (b)(3) [Doc. # 16] and Debtor's objection [Doc. # 27]. The court held a hearing that Debtor, Debtor's counsel and counsel for the United States Trustee ("UST") attended in person and at which the parties had the opportunity to present testimony and evidence in support of their positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and the arguments of counsel as well as testimony and evidence offered

by the parties, for the reasons that follow, the court will grant the UST's motion and will dismiss Debtor's Chapter 7 case unless she timely converts to a case under Chapter 13.

## BACKGROUND[1]

Debtor is single and has no dependents. Although Debtor's adult son and his two-year-old child live with her now, at the time of filing she lived alone. She is a sergeant at the Lucas County Sheriff's Department where she has worked for twenty-two years. According to Debtor's last pay advice before filing her bankruptcy petition, received on May 2, 2008, she had earned year-to-date gross income of $23,985. In 2006 and 2007, Debtor had gross income of $55,000 and $61,712, respectively. Although her pay advices show that she averaged approximately twelve overtime hours per month during the first four months of 2008, [*see* Doc. # 25], Debtor testified that she does not intend to continue working overtime.

Debtor's financial difficulties arose from a sudden drop in household income as a result of her husband leaving her in September 2006 and their eventual divorce on May 7, 2008. Since that time, Debtor has moved out of the marital home that she and her ex-husband jointly own and is now living in an apartment. She testified that she could not make the monthly mortgage payment on the house and pay her other bills on her income alone.

On May 14, 2008, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that her debts are primarily consumer debts. As required under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), she completed and filed with her petition Official Form B22A, Statement of Current Monthly Income and Means Test Calculation. *See* 11 U.S.C. § 707(b)(2)(C). In her means test calculation, she reports total current monthly income ("CMI"), as that term is defined in 11 U.S.C. § 101(10A), in the amount of $4,428.80, which is above the median family income for a family of one in Ohio. Debtor's means test calculation includes deductions totaling $3,670. In light of Debtor's calculations, she reports monthly disposable income of $758.80 and, therefore, indicates that a presumption of abuse arises under § 707(b)(2).

Debtor's Schedule D shows total secured debt in the amount of $205,000. Her secured debts include $135,000 secured by the marital home, which she values at $130,000,[2] and $40,000 secured by a timeshare

---

[1] At the UST's request, the court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

[2] Debtor's Schedule D states that the value of the home is $135,000, while Schedule A states that the value of the same home is only $130,000. The court notes that relief from the automatic stay has been granted as to the marital home and that the creditor's motion for relief set forth a value of the home based on the Lucas County Auditor's valuation of $126,700. The court

2

in Hawaii valued at $49,552.73,[3] both debts for which she is jointly liable under the applicable notes with her ex-husband. Debtor testified that the monthly mortgage obligation on the marital home is $1,100 and on the timeshare is $755. Her debts also include $15,000 for a leased 2005 Jeep Grand Cherokee, the value of which is stated at $2,243, [Doc. #1, Schedules D and G], and $15,000 secured by a 2006 Chrysler Sebring valued at $15,000 [Doc. #1, Schedule D]. Debtor testified that her ex-husband drives one of the vehicles but that she is jointly liable on the debt pertaining to that vehicle.[4] Debtor indicated that the domestic relations court ordered her ex-husband in the parties' divorce to pay the debts secured by the former marital residence and by the time share.

Debtor's bankruptcy schedules also show unsecured nonpriority debts, consisting almost entirely of credit card obligations, in the total amount of $20,292.88. Debtor has no priority unsecured debt. In her Statement of Intention, Debtor states that she intends to reaffirm the debt owed on the Chrysler Sebring. She also states that she intends to reaffirm the unsecured debts owed on five (Capital One, Chase, Target, Dale and Sam's Club totaling $6,053), [Doc. #1, Individual Debtor's Statement of Intention], of the seven credit cards listed on Schedule F.

Debtor's amended Schedule I shows gross monthly income in the amount of $4,428.40 and net monthly income after payroll deductions in the amount of 2,707.36. Schedule J shows total monthly expenses in the amount of $2,377, which includes, among other things, a rent expense of $855, and a car payment of $412. According to Schedules I and J, Debtor's monthly income after expenses totals approximately $330. However, Debtor testified that, although not included on Schedule J, she also has monthly expenses for electricity, heating fuel and cable. She did not specify the amounts of those unscheduled monthly expenses. In addition, she pays $40 per month for life insurance for her 28-year-old son and 31-year-old daughter and $140 per month for health insurance for her daughter, who works but whose employer does not offer health insurance.

The UST filed a timely motion to dismiss for abuse under both § 707(b)(2) and (b)(3).

## LAW AND ANALYSIS

---

assumes, therefore, that the $135,000 valuation is an error.

[3] Schedule A, however, contradicts Schedule D by stating that the secured claim is in the amount of $49,552.73 and the value of the timeshare is $40,000. This contradiction, however, does not affect the outcome of this motion.

[4] The court infers from the record that the leased 2005 Grand Cherokee is the vehicle retained by Debtor's ex-husband. Debtor indicated an intention to [Doc. #1, Individual Debtor's Statement of Intention] and has signed a reaffirmation agreement form, albeit incomplete, for the debt owed to Drive Financial pertaining to the 2006 Chrysler Sebring [Doc. ## 31, 34], but does not indicate any intention to assume the three year lease for the 2005 Jeep Grand Cherokee or otherwise reaffirm the obligation evidenced thereby [*see* Doc. #1, Individual Debtor's Statement of Intention].

3

### A. 11 U.S.C. § 707(b)(2)

Section 707(b)(1) provides that the court, after notice and a hearing, "may dismiss a case filed by an individual debtor under [Chapter 7] whose debts are primarily consumer debts ... if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." Under § 707(b)(2) and (3), Congress provided

two methods by which a party may prove abuse. Section 707(b)(2)(A) sets forth an extensive "means test" calculation to determine whether there is a presumption of abuse. The means test calculation requires a debtor to subtract certain allowed deductions from the debtor's CMI. A presumption of abuse exists if the resulting amount, multiplied by sixty, is not less than the lesser of

> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or
> (II) $10,950.

11 U.S.C. § 707(b)(2)(A)(i). Where the means test calculation results in sufficient disposable income such that a presumption of abuse arises, a debtor may rebut that presumption by demonstrating "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces," that justify additional expenses or adjustments of CMI for which there is no reasonable alternative. 11 U.S.C. § 707(b)(2)(B). Accordingly, the extent to which the court may consider "the life behind the numbers" in the means test calculation, as urged by Debtor's counsel, is limited to the very narrow circumstances that Congress described in § 707(b)(2)(B).

In this case, Debtor states on her Form B22A that a presumption of abuse arises and she presents no special circumstances justifying additional expenses for which there is no reasonable alternative. Paying for life and health insurance for her adult children is not such a circumstance. *Cf. In re Hays*, Case No. 07-41285, 2008 WL 1924233, *2 (Bankr. D. Kan. April 29, 2008) (holding that debtors cannot claim expenses on the means test for non-dependent adult children); *In re Walker*, 383 B.R. 830, 838 (Bankr. N.D. Ga. 2008) (finding abuse where debtors were supporting adult children at the expense of unsecured creditors); *In re Staub*, 256 B.R. 567, 570 (Bankr. M.D. Pa. 2000) (noting that expenses for adult children "should not be foisted upon a debtor's pre-petition creditors"). Nevertheless, the UST acknowledges that Debtor's means test calculation is incorrect. According to the UST, Debtor has understated both her income and her allowed deductions on the means test. The court agrees but finds the UST's proposed calculations also understate the deductions to which Debtor is entitled.

Debtor reports on Form B22A a CMI of only $4,428.80. "Current monthly income" is a debtor's average monthly income received from all sources during the six-month period before filing. 11 U.S.C.

4

§ 101(10A). Debtor's figure does not include any overtime that she earned during the relevant time period and is the result of an inaccurate calculation.[5] The UST offers Debtor's last pay advice before filing her petition dated May 2, 2008, which shows year-to-date income of $23,895, or an average monthly income over this four-month period of $5,973.75. [UST Ex. 3, p.2]. Thus, the UST argues that Debtor's CMI is understated on her means test. While a full six month record of income is not before the court, Debtor testified that she had been working overtime during this period in an attempt to pay her bills. The court, therefore, agrees that Debtor's income is understated on her means test and finds that $5,973 more accurately reflects her CMI as defined in § 101(10A). There is no basis under the definition of CMI for excluding overtime from the calculation.

The UST also offered his calculation of deductions from CMI to which Debtor is entitled, correcting deductions shown on Debtor's means test that are overstated and adding deductions Debtor neglected to include. [UST Ex. 4]. The UST's calculation of deductions totals $4,661.97 and results in monthly disposable income of $1,311.78. [*Id.*] This calculation, however, does not include on Line 42 deductions for Debtor's secured debt obligations relating to the mortgage on the marital home in the amount of $1,100 and the timeshare in Hawaii in the amount of $755 due to Debtor's failure to provide that information on her means test and incorrectly includes her $855 rent expense as a secured debt payment. Adjusting the UST's calculations to include her correct secured debt payments and, since she is no longer living in the marital home, the Internal Revenue Service local housing and utilities standard expense deduction of $633 on Line 20B, Debtor's total deductions are $6,294.97, and her monthly disposable income under the means test is a negative $321. As such, there is no presumption of abuse under § 707(b)(2).

## B. 11 U.S.C. § 707(b)(3)

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated its own version of this judicially created construct in § 707(b)(3) by requiring a court to specifically consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). Although pre-BAPCPA case law applying these

---

[5] Debtor calculates her monthly income by multiplying her biweekly income by two. The correct calculation is (biweekly income x 26 ÷ 12).

5

concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).[6]

In this case, the UST contends that the totality of the circumstances shows that Debtor is not needy and has the ability to repay a significant portion of her unsecured debt, pointing to her Schedules I and J that show income after expenses in the amount of $330. Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone may be sufficient under some circumstances to warrant dismissal. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether [s]he is eligible for adjustment of [her] debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease [her] financial predicament, the degree of relief obtainable through private negotiations, and whether [her] expenses can be reduced significantly without depriving [her] of adequate food, clothing, shelter and other necessities." *Id.* at 126-27.

In this case, Debtor enjoys a stable source of income, having worked for her employer for over twenty years. As a debtor with regular, stable income, she is eligible for adjustment of her debts through Chapter 13 since her debts are less than the statutory eligibility limits. *See* 11 U.S.C. §§ 109(e), 101(30). Although Debtor's schedules show income after expenses in the amount of $330, suggesting that she has income to fund a meaningful Chapter 13 plan, Debtor testified that Schedule J does not include all of her expenses. In particular, it does not include certain expenses for electricity, heating fuel and cable, the amounts of which Debtor did not specify, and expenses in the amount of $180 for life and health insurance for her adult children. However, Debtor's expenses for her non-dependent adult children are discretionary and, while her desire to assist her children may be commendable, she is not free to do so at the expense of her prepetition creditors. *See Walker*, 383 B.R. at 838; *Staub*, 256 B.R. at 570. These funds alone could instead be applied over the sixty-month maximum Chapter 13 plan duration for above-median income debtors, *see* 11 U.S.C. § 1322(d)(1), to repay a meaningful portion of Debtor's unsecured debt without

---

[6] As this court noted in an earlier opinion:
While Congress has clearly lowered the dismissal standard, articulation of what that change really means in decision-making in a particular case is a slippery enterprise at best. A totality of circumstances amounting to substantial abuse would obviously also amount to abuse. The converse is not necessarily true. Perhaps more telling legislative evidence of a Congressional intent that bankruptcy courts should now afford less deference to a debtor's choice of Chapter 7 relief is the elimination from amended § 707(b) of the language in former § 707(b) stating that "[t]here shall be a presumption in favor of granting the relief requested by the debtor."
*In re Carney*, No. 07-31690, 2007 WL 4287855, *2, 2007 Bankr. LEXIS 4100, *7 (Bankr. N.D. Ohio December 5, 2007).

6

depriving her of any necessity.

The court also notes that Debtor has agreed to reaffirm a debt owed to HSBC Bank Nevada, N.A. - Furniture Row. [Doc. # 35]. The amount of the debt for furniture that is being reaffirmed is $2,400, and the agreement requires 36 monthly payments of $67.00 starting in November 2008. This debt was not listed on her Schedule D, or on her Individual Debtor's Statement of Intentions, although it is not clear whether it is one of the debts listed on Schedule F. Significantly, however, Part D of the HSBC Reaffirmation Agreement states that she has monthly income exceeding her monthly expenses in the amount of $697 with which to make the $67 monthly payments. By Debtor's own calculation on that form, she would still have over $600 a month available to pay her unsecured debts.

Indeed, Debtor essentially concedes that she is able to pay her unsecured debt and, in fact, has indicated an intent to reaffirm five of the seven credit card debts listed on Schedule F, representing 29% in amount of her total Schedule F unsecured debt. With equality of treatment of similarly situated creditors being one of the fundamental policies underpinning the Bankruptcy Code, there is no principled bankruptcy basis for such unequal treatment of similarly situated creditors under Chapter 7 as between those unsecured debts Debtor intends to reaffirm and those she does not intend to reaffirm. *Cf.* 11 U.S.C. § 1322(a)(3) and (b)(1). The court agrees with the United States Trustee that this fact is relevant to the totality of her financial circumstances and weighs toward a finding of abuse under § 707(b)(3). It demonstrates both an admitted ability to repay a meaningful portion of her unsecured debt, even if the total amount intended to be reaffirmed were applied against the debts owed to all of her Schedule F unsecured creditors, and a case objective in picking and choosing whom to pay that conflicts with the purpose and spirit of the Bankruptcy Code.

Debtor argues, however, that she is unable to pay the secured debt on the marital home, the Hawaii timeshare, and the Grand Cherokee and that the under-secured portion of those debts are the "gorilla on her back" that makes the totality of the circumstances such that receiving a discharge would not be an abuse of the provisions of Chapter 7. The court acknowledges that the sad and sudden disintegration of Debtor's marriage and the resulting inability to sustain her former lifestyle on her own income is the event that precipitated this bankruptcy filing. However, even in the worst case scenario as presently shown by her schedules, the record still demonstrates the ability to repay a meaningful portion of any under-secured

7

liability that she may face. The under-secured portion of Debtor's mortgage and car debts totals $17,556.[7] Debtor's Schedule F shows unsecured debt in the amount of $20,292. Her total unsecured debt as shown by her schedules is therefore approximately $37,848. Applying just the $180 now used to pay her adult children's insurance expenses to a sixty-month Chapter 13 plan for an above median income debtor would total, after administrative expenses, approximately $10,087. As Debtor has no unsecured priority debt, unsecured creditors may receive a dividend of approximately 26% under a Chapter 13 plan, or more if claims are not filed by all creditors as frequently occurs. *See In re Behlke*, 338 F.3d at 437 (finding substantial abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors). While it is not the court's duty to devise a Chapter 13 plan, Debtor would also have the ability in a Chapter 13 case to, among other provisions, address the joint debts in a manner that could lessen their potential burden upon her. *See* 11 U.S.C. § 1322(b)(1). For example, the house on Luddington is no longer her principal residence and the debt it secures is thus not immune from modification under 11 U.S.C § 1322(b)(2).

The availability of debtors' remedies under state law (such as a municipal court trusteeship or credit counseling proceedings that will stop wage garnishments under Ohio law) and the relief that might be afforded through private negotiations (such as a deed in lieu of foreclosure or extension and composition agreements with particular creditors) are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has expressly addressed these factors in this case. However, the court finds it significant that under their divorce decree Debtor's ex-husband is responsible for payment of the secured debts hovering over Debtor's efforts to move on with her life personally and financially. Debtor thus has an avenue through the state domestic relations court to compel compliance with his obligations under the decree and to deal with any liability she faces from under-secured debts.

In sum, the court finds that Debtor has stable income and is able to pay a meaningful portion of her unsecured debts out of her future income without being deprived of adequate housing, food, clothing, or other necessities. On balance, the preponderance of the evidence shows that granting Debtor relief under Chapter 7 of the Bankruptcy Code would, therefore, be an abuse of the provisions of that chapter given the totality of her financial circumstances.

---

[7] Debtor's Schedule D states that only $12,756.69 of the debt owed to creditors holding secured claims is unsecured. However, as noted above, the court assumes that Debtor's valuation of the marital home is $130,000 as stated on Schedule A, not $135,000 as stated on Schedule D, thus accounting for the additional $5,000 of under-secured debt.

8

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtor is allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the United States Trustee's motion to dismiss [Doc. #16] will be granted, and this case will be dismissed, by separate order of the court.